George N. **CLARK,** Hamilton County Farm Bureau Cooperative Association, Inc. Britton Farms, Inc., Appellants–Plaintiffs,

v.

**CSX TRANSPORTATION, INC.,** Appellee–Defendant.

No. 29A02–9902–CV–139.

Court of Appeals of Indiana.

Oct. 12, 2000.

Rehearing Denied Dec. 7, 2000.

Nels J. Ackerson, Cecilia Fex, The Ackerson Group, Chartered, Washington, D.C., John D. Proffitt, Campbell Kyle Proffitt, Noblesville, Indiana, Henry J. Price, Arlene G. Anderson, Price, Potter & Mellowitz, Indianapolis, Indiana, Attorneys for Appellants.

Christopher G. Scanlon, Mark A. Voigtmann, Thomas M. Fisher, April E. Sellers, Baker & Daniels, Indianapolis, Indiana, Richard McMillan, Jr., Crowell & Moring LLP, Washington, D.C., Michael A. Howard, Noblesville, Indiana, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

### Case Summary[1]

Appellants, George N. Clark, et al. ("Subclass") appeal the trial court's grant of partial summary judgment to CSX Transportation, Inc. (CSX). Specifically, the Subclass contends that the trial court erred in construing certain deeds as conveyances of fee simple title to CSX rather than as easements.

CSX cross-appeals the trial court's grant of partial summary judgment to the Subclass. CSX contends that the trial court erred in construing two deeds as conveyances of an easement rather than fee simple. CSX also asserts that its due process rights were violated. In particular, CSX contends that the trial court erred when it entered judgment in favor of the Subclass without the requisite proof to quiet title and erred in creating a claims process.

The trial court followed well established rules of deed construction. In application of the rules, the trial court determined that certain deeds conveyed fee simple to CSX and others conveyed easements to CSX. With the exception of the deed to parcel 4 on map 21, we find no error in the court's interpretation of the deeds under

---

1. We hereby deny the Subclass's motion to strike portions of CSX's reply brief.

the rules of construction. Further, the Subclass requested declaratory relief and did not seek to quiet title in the land. Because the court granted only declaratory relief, CSX's due process rights were not violated. We affirm in part, and reverse in part.

## Facts and Procedural History[2]

In August 1993, a group of landowners filed a class action complaint against CSX. The class action was certified by the trial court in May 1994, and certification was affirmed by this court on appeal in 1995.[3] The class alleged that CSX received only an easement in the property along the railroad corridor, and therefore, upon abandonment of the railroad, the easement was extinguished, thereby terminating any interest CSX had in the property. The complaint sought damages for slander of title based upon CSX's conduct in allegedly selling the land to third parties. The class also sought declaratory relief to remove the cloud on title to the class members' land and determine that CSX had no interest in the land.

On December 19, 1996, the trial court created a subclass consisting of class members who "own land that lies on or between the north side of 96th Street and south side of 146th Street in the Clay Township of Hamilton County, which adjoins the former Monon corridor." Record at 360. The City of Carmel sought to acquire the land to be converted to a recreational trail. The purpose of the Subclass was "to determine whether the land to be acquired by the City of Carmel is owned by the members of the Subclass or by CSX, and in the process, resolve one portion of the statewide class action." Record at 368.

The parties agreed to a procedure for determining whether the conveyances related to the Monon corridor constituted a grant of fee simple to the railroad or only an easement. The parties reviewed the conveyances, upon which CSX conceded that it did not have a fee interest in 11 of the 34 parcels. The remaining 23 parcels were submitted to the trial court on cross-motions for summary judgment. Both parties claimed fee ownership of the disputed property. The disputed deeds were separated into eight categories based upon similarities in the language of the conveyances.

On August 4, 1997, the trial court issued an order on burden of proof, which set forth the burden that the Subclass members must meet to prove their individual quiet title claims. Record at 790. The court also issued its order on the cross-motions for summary judgment which concerned only the issue of deed construction and identified the interests held by CSX. Record at 796–828. After the Supreme Court issued its decision in *Tazian v. Cline*, 686 N.E.2d 95 (Ind.1997), the trial court issued a revised partial summary judgment order incorporating the holdings of that case. The court concluded that CSX had a fee interest in 11 of the 21 disputed deeds and an easement in the remaining parcels.

A trial on the Subclass's claims was held on September 22, 1998. Record at 3737. The Subclass offered substantially the same evidence as was designated for the partial summary judgment motions. CSX moved for involuntary dismissal under Rule 41(B), arguing that the Subclass had not met its burden of proof to quiet title in the individual members of the Subclass. On January 6, 1999, the court issued its order on the Carmel Subclass Claim to Quiet Title as to Defendant CSX. The court denied CSX's motion for involuntary dismissal, stating that "CSX's arguments are unpersuasive at the present stage of this litigation because the judgments rendered in this Order are as to the Carmel Subclass *as a class*, not as to the specific title to specific property of any specific member of the Carmel Subclass. Deter-

---

**2.** We heard oral argument in this cause on June 29, 2000, in Indianapolis, Indiana.

**3.** *CSX Transp., Inc. v. Clark*, 646 N.E.2d 1003 (Ind.Ct.App.1995).

minations on the specific titles of specific members of the Carmel Subclass must necessarily be reserved for the subsequent claims process." Record at 2899. The trial court entered judgment in CSX's favor on the parcels previously determined to be owned by CSX in fee. The court entered judgment in favor of the Subclass and against CSX as to the other parcels because fee simple title to the land reverted to the landowners upon the abandonment of the railroad. Upon CSX's motion, the trial court entered final judgment pursuant to Indiana Trial Rule 54(B).[4] This appeal now ensues.

### Discussion and Decision

#### Standard of Review

Our summary judgment standard of review is well settled. Upon review of the grant or denial of a motion for summary judgment, we apply the same legal standard as the trial court. *Erie Insurance Co. v. American Painting Co.*, 678 N.E.2d 844, 845 (Ind.Ct.App.1997). Summary judgment shall be granted if the designated evidence shows that there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sizemore v. Arnold*, 647 N.E.2d 697, 698–99 (Ind.Ct. App.1995), *reh'g denied*. Once the moving party has sustained its initial burden of showing the absence of a genuine issue and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts showing a genuine issue for trial. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). We will resolve any doubt as to fact or inference to be drawn from the evidence in favor of the party opposing the motion. *Frye v. Trustees of Rumbletown Free Methodist Church*, 657 N.E.2d 745, 747 (Ind.Ct.App. 1995), *reh'g denied*. The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Hendricks County Bank & Trust Co. v. Guthrie Building Materials, Inc.*, 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996), *trans. denied*.

Where, as here, the material facts are essentially undisputed, our sole task is to determine whether the trial court properly applied the law to the facts. *Laux v. Chopin Land Associates, Inc.*, 615 N.E.2d 902, 905 (Ind.Ct.App.1993), *trans. denied*. Although the trial court entered findings of fact and conclusions of law, they are not binding upon this court. *Eck & Associates, Inc. v. Alusuisse Flexible Packaging, Inc.*, 700 N.E.2d 1163, 1166 (Ind.Ct.App. 1998), *trans. denied*. However, the findings facilitate our review by providing valuable insight into the court's decision. *Id.*

### I. Deed Construction

Both the Subclass and CSX challenge the trial court's interpretation of particular deeds. To determine whether the trial court properly granted partial summary judgment, we must consider whether CSX's predecessors-in-interest held fee simple title to or easements over the parcels of land in question. We rely on the methodology established by our supreme court to construe the meaning of deeds conveying a strip of land to a railroad.

The object of deed construction is to ascertain the intent of the parties and where there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone. *Brown v. Penn Central Corp.*, 510 N.E.2d 641, 643 (Ind.1987). In construing a deed, courts "should regard the deed in its entirety, considering the parts of the deed together so that no part is rejected." *Tazian v. Cline*, 686 N.E.2d 95, 97 (Ind. 1997) (citing *Brown*, 510 N.E.2d at 643). We are constrained by the "four corners" rule in interpreting deeds. This rule provides that

---

4. In the alternative, the trial court certified the case for interlocutory appeal. However, as the judgment of the court was a full determination of the claims of the Subclass, we conclude this is an appeal from a T.R. 54 final judgment.

in construing written instrument, the language of the instrument, if unambiguous, determines the intent of the instrument such that parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence. Even if ambiguity exists, extrinsic evidence is only admissible to explain the instrument and not contradict it. *Lippeatt v. Comet Coal and Clay Co., Inc.*, 419 N.E.2d 1332, 1335 (Ind.Ct.App.1981).

■■■ Further, in interpreting the deed, we do not consider the cover and title of the instrument where the granting language is clear and unambiguous. *See Brown v. State*, 130 Wash.2d 430, 924 P.2d 908, 915 (1996) (concluding that deed, which followed statutory language of fee simple and was void of limiting language, conveyed fee simple title regardless of the caption "Right of Way Deed"), *recons. denied.* Thus, while the title may provide additional evidence of intent where the language of the deed is unclear, it is not dispositive of the nature of the conveyance. Likewise, words such as "over, across, and through" may provide evidence of a party's intent to convey an easement where the words describe the use of the land. *Tazian*, 686 N.E.2d at 99.

■■■ The mere presence of the term "right of way" does not, in and of itself, indicate an intent to convey an easement. Rather, when appearing outside of the granting clause, the term is of limited value because it has two meanings. Right of way refers to 1) a right to cross over the land of another, an easement, and 2) the strip of land upon which a railroad is constructed. *Joy v. City of St. Louis*, 138 U.S. 1, 11 S.Ct. 243, 34 L.Ed. 843 (1891); *see also* IND.CODE § 32–5–12–4 (providing that " 'right-of-way' means a strip or parcel of real property in which a railroad has acquired an interest for use as a part of the railroad's transportation corridor"); BLACK'S LAW DICTIONARY 1191 (5th ed.1979) (stating that the "[t]erm 'right of way'

sometimes is used to describe a right belonging to a party to pass over land of another, but it is also used to describe that strip of land upon which railroad companies construct their road bed, and, when so used, the term refers to the land itself, not the right of passage over it").

■■■ Deeds generally contain three important clauses: the granting clause, the habendum clause, and the descriptive clause. We initially examine the granting clause to determine the object of the conveyance. *Tazian*, 686 N.E.2d at 98. As our supreme court stated in *Brown*:

> A deed that conveys a *right* generally conveys only an easement. The general rule is that a conveyance to a railroad of a strip, piece, or parcel of land, without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee, but reference to a right-of-way in such a conveyance generally leads to its construction as conveying only an easement.

510 N.E.2d at 644 (citations omitted). The habendum clause may modify or limit the grant, but it does not defeat a clear, unambiguous grant. *L. & G. Realty v. Indianapolis*, 127 Ind.App. 315, 322, 139 N.E.2d 580, 585 (1957). It is generally held that if there are any inconsistencies between the granting clause and the habendum clause, the granting clause will prevail because the granting clause is "the most dependable expression of the grantor's intention" and "is considered to be the very essence of the deed." *Long v. Horton*, 126 Ind.App. 651, 133 N.E.2d 568, 570–71 (1956). The descriptive clause provides a means for identification of the land but is not intended to identify the land. *Tazian*, 686 N.E.2d at 100.

■■■ Additionally, in construing a deed, the court considers the instrument relative to the statutes in effect at the time of the conveyance. *Tazian*, 686 N.E.2d at 98; *Consolidated Rail Corp. v. Lewellen*, 682

N.E.2d 779, 781 (Ind.1997). The property statute in effect at the time of conveyance provides that any conveyance worded: " 'A.B. conveys and warrants to C.D.' (here describe the premises) 'for the sum of' (here insert the consideration,) ... shall be deemed and held to be a conveyance in fee simple to the grantee...." Ind. Rev. Stats. 1852, ch. 23, § 12; IND.CODE § 32–1–2–12.

The consideration paid by the railroad may be further evidence of the parties' intent. *Richard S. Brunt Trust v. Plantz*, 458 N.E.2d 251, 255 (Ind.Ct.App. 1983). However, lack of consideration or nominal consideration alone is not sufficient cause for setting aside a deed. *Hunter v. Milhous*, 159 Ind.App. 105, 305 N.E.2d 448, 460 (1973). "It is a well-known fact that often a conveyance recites a nominal consideration whereas the true consideration is not nominal. It is therefore never certain that the recited consideration is the true consideration." *Pender v. Dowse*, 1 Utah 2d 283, 290, 265 P.2d 644, 649 (1954). We conclude that nominal monetary consideration, alone, does not make the instrument ambiguous, nor does it create an easement. *Elton Schmidt & Sons Farm Co. v. Kneib*, 2 Neb.App. 12, 19, 507 N.W.2d 305, 308–09 (1993) (holding that recited consideration of one dollar does not render deed ambiguous as "other good and valuable consideration" may have been given). *See also Coleman v. Missouri Pac. R.R.*, 294 Ark. 633, 638, 745 S.W.2d 622, 625 (1988) (stating that deed which recited consideration consisting "of the benefits to accrue to the [grantors] from the building of the railway company" did not create an ambiguity in a deed conveying fee simple as such consideration "could well have been most valuable"); *Kingsland v. Godbold*, 456 So.2d 501, 502 (Fla.App.1984) ("Even a nominal consideration will support a deed. The sufficiency of consideration is not a relevant basis upon which to void a deed."); *Fuchs v. Reorganized School Dist. No. 2, Gasconade County*, 251 S.W.2d 677, 679–80 (Mo.

1952) (stating that nominal consideration "might, in connection with language lacking in preciseness or in connection with other circumstances surrounding the conveyance," aid in determining the nature of the conveyance, but "the fact of nominal consideration, standing alone, is not sufficient from which to find an intention to convey other than an unlimited fee").

Where a deed is ambiguous as to the character of the interest conveyed and the railroad was responsible for the form of the deed, we will construe the language of the deed in favor of the grantor and against the railroad. *Hefty v. All Other Members of the Certified Settlement Class*, 680 N.E.2d 843, 855 (Ind.1997), *reh'g denied*. Thus, in the absence of language conveying the strip of land in fee simple, we will construe such deed as conveying an easement. *See Richard S. Brunt Trust*, 458 N.E.2d at 252. Furthermore, public policy dictates that we construe any ambiguity in favor of the original grantors. *Ross, Inc. v. Legler*, 245 Ind. 655, 659, 199 N.E.2d 346, 347–48 (1964). As our supreme court has stated:

> Public policy does not favor the conveyance of strips of land by simple titles to railroad companies for right-of-way purposes; either by deed or condemnation. This policy is based upon the fact that the alienation of such strips or belts of land from and across the primary or parent bodies of the land from which they are severed, is obviously not necessary to the purpose for which such conveyances are made after abandonment of the intended uses as expressed in the conveyance, and that thereafter such severance generally operates adversely to the normal and best use of the property involved. Therefore, where there is ambiguity as to the character of the interest or title conveyed such ambiguity will generally be construed in favor of the original grantors, their heirs or assigns.

*Brown*, 510 N.E.2d at 644 (citing *Ross, Inc.*, 245 Ind. at 659, 199 N.E.2d at 347–

48). Having determined the framework for construction, we now turn to the deeds before us on appeal.

### A. Subclass Claims

The Subclass challenges the trial court's determination that certain deeds in categories 3, 4, 5, and 8 convey fee simple to the railroad.

#### 1. Category 3: Map 20, Parcel 21

The court determined that this deed conveyed fee simple to the railroad. In doing so, the court relied on the use of the statutory language "convey and warrant," the absence of limiting language including the term "right-of-way," and the title on the cover, "Warranty Deed." Record at 961. The court also noted that although the word "through" was used in the descriptive clause of the deed, such language did not limit the conveyance. We agree. The granting clause of the deed clearly conveys a strip of land to the railroad. Furthermore, the language of the other clauses does not limit the use of the land or describe the land as other than a "strip" of land. *See Brown,* 510 N.E.2d at 644 (noting general rule that conveyance of a *strip, piece,* or *parcel* of land indicates fee simple). Hence, the language of the deed clearly indicates that the instrument conveys fee simple to CSX.

The Subclass argues, however, that the deed was granted after the railroad had already begun construction on the land and, therefore, was granted in lieu of condemnation proceedings. Thus, the Subclass contends the deed conveyed an easement as that was the only interest that could be obtained through condemnation proceedings. Appellant's Br. at 21–26. The Subclass's argument, however, is of no consequence. We are not permitted to consider extrinsic evidence where the deed is unambiguous.[5] Rather, we look only to the language of the deed to determine the grantor's intent. *See Lippeatt,* 419 N.E.2d

at 1335. Hence, we decline the Subclass's invitation to contradict the clear language of the deed through parol evidence.

#### 2. Category 4: Map 20, Parcels 20 and 20a

The deed to parcels 20 and 20a conveys and warrants "Lots Three (3) and Twelve (12) in Mendenhall's addition to the Town of Carmel." Record at 458, 461. There is no limiting language in the deed. Furthermore, although the term "right-of-way" appears on the cover of the deed, we agree with the trial court that the conveyance is not limited. Here again, the language of the deed indicates the grantor's intent to convey a fee simple.

The Subclass argues that the term "right-of-way" on the cover of the deed creates an ambiguity as to the interest conveyed. Appellant's Br. at 19. Initially, we note that language on the cover of the deed is not dispositive of the grantor's intent. Reliance on such language is particularly troubling where notations may have been made by a third person not a party to the instrument or where captions are added to the cover after the grantor has made the conveyance.

Here, "right-of-way" is used to refer to the record in which the deeds are recorded. Given the two meanings of "right of way," the phrase "right-of-way record" is consistent with a conveyance in fee simple and does not create an ambiguity. *See Tazian,* 686 N.E.2d at 97 ("[O]ne of the most important rules in the construction of deeds is so to construe them that no part shall be rejected. The object of all construction is to ascertain the intent of the parties and it must have been their intent to have some meaning in every part. It never could be a man's intent to contradict himself; therefore we should lean to such a construction as reconciles the different parts, and reject a construction which

---

**5.** We note that even if we were to consider condemnation proceedings in construing the deeds, the Subclass presented no evidence demonstrating that the grantors were under a threat of condemnation and would not have conveyed their property in fee otherwise.

leads to a contradiction ....."(citations omitted)). Moreover, although not dispositive, the habendum clause provides that the grant is "forever," indicating a grant in fee simple rather than an easement. *See Tazian,* 686 N.E.2d at 101

### 3. Category 5: Map 20, Parcel 15 and Map 21, Parcels 5, 10, and 10a

The deeds in category 5 are all entitled "Right of Way Deed" on the cover. The Subclass contends that the presence of the term "Right of Way Deed" on the cover of the instruments creates an ambiguity and, therefore, the instruments must be construed to convey only easements. Appellant's Br. at 13–14. The Subclass argues that the trial court failed to consider the deed in its entirety; that the mere presence of the term "right-of-way" creates an ambiguity. This argument, extended to its logical conclusion, would completely eliminate the rules of deed construction. We would merely look for the term "right-of-way" in an instrument and then determine that the instrument conveyed an easement.

■ Moreover, the terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation. Where the terms of a contract are clear and unambiguous, "the terms are conclusive and we will not construe the contract or look at extrinsic evidence but will merely apply the contractual provisions." *Indiana Gaming Co., L.P. v. Blevins,* 724 N.E.2d 274, 278 (Ind.Ct.App.2000) (citation omitted), *trans. denied.*

■ On the contrary, we agree with the trial court that where the deed conveys a strip of land without limiting language the railroad has a fee simple, despite the caption placed on the deed. *See Nebraska v. Union Pacific Railroad Co.,* 241 Neb. 675, 490 N.W.2d 461, 465 (1992) (concluding that deed, although it was entitled "right of way deed," conveyed fee simple); *Brown v. Washington,* 924 P.2d at 915 (holding that deed, which followed statutory language of fee simple and was void of

limiting language, conveyed fee simple title regardless of the caption "Right of Way Deed"), *recons. denied.* Moreover, as we discussed *supra,* given the two meanings of "right of way" and construing all parts of the deed consistent with one another, the title "Right of Way Deed" indicates a deed to the strip of land upon which a railroad is constructed. Thus, the caption on the cover of the deed does not create an ambiguity in a clearly worded conveyance.

Further, the Subclass argues that the consideration listed in the category 5 deeds indicates that the conveyances were based on the *use* of the property and, therefore, were easements. The deeds provide: "That said party of the first part, for and in consideration of the benefits to accrue to [me] from the location and construction of its railroad and the sum of ... dollar ... do hereby convey and warrant unto said party of the second part, its successors and assigns, a strip of Land...." Record at 448, 494, 509, 513.

■ The Subclass relies on the language of consideration to support its argument that the deed conveys an easement. However, the granting language unambiguously "convey[s] and warrant[s] ... a strip of Land." We conclude, therefore, that the conveyance was not dependent on the use of the property. The Subclass contends that recital of the benefits associated with the construction of the railroad is not adequate consideration. We acknowledge our court's holding in *Brunt Trust* that "where the consideration is nominal or where the only consideration is the benefit to be derived by the grantor from the construction of the railroad rather than the full market value for the interest acquired reflects the intent to create an easement." *Brunt Trust,* 458 N.E.2d at 255. Yet, such consideration alone is not persuasive of a party's intent to convey an easement, but is another factor that may be indicative of an easement. *Id.* Indeed, many conveyances state nominal consideration, but the actual consideration given is much greater. *See Alabama &*

*Vicksburg Ry. Co. v. Mashburn*, 235 Miss. 346, 109 So.2d 533 (1959) (holding that where deed conveyed a portion of land, nominal consideration was of minimal value in determining whether an easement or fee simple was conveyed).

#### a) Map 21, Parcel 5

The deed to parcel 5 on map 21 conveyed and warranted a strip of land for the consideration of $425.00. None of the three deed clauses contains limiting language. In particular, the habendum clause indicates that the grant is "forever." Thus, despite the caption "Right of Way Deed" on the cover, we conclude the instrument clearly conveys fee simple title to the railroad. Further, the record does not indicate the fair market value of the land in 1883. Absent such evidence we cannot conclude that the consideration paid was conclusive evidence of an intent to convey an easement.

#### b) Map 21, Parcels 10 and 10a

The deed to parcels 10 and 10a on map 21 also contains a clear and unambiguous granting clause in which the grantor conveys and warrants a strip of land for consideration of $175.00. The deed contains no limiting language. The deed also indicates that the railroad would erect a fence along the railroad corridor. Again, despite the caption "Right of Way Deed," we conclude the instrument conveys fee simple title to the railroad. The cover of the deed is outside the four corners of the document, and therefore, the caption appearing on the cover is not considered. Also, as consideration for the parcels the railroad paid $175.00 and agreed to erect a fence along the railroad. Again, this is clearly more than nominal consideration and therefore is not conclusive as to the intent of the parties.

#### c) Map 20, Parcel 15

The deed to parcel 15 on map 20 also conveys and warrants a strip of land to the railroad. Likewise here, the deed is void of any limiting language and the habendum clause indicates that the grant is "forever." The consideration recited in the grant was $1.00, and the grant also provided that the railroad agreed to move and reset a fence along the railroad and to provide a wagon road along the railroad as good as the one in existence before construction of the railroad. Record at 448. We conclude that given the unambiguous language of conveyance, the consideration paid for this conveyance does not indicate that the parties intended to convey an easement. *See Tazian*, 686 N.E.2d at 99 (stating that consideration of $500 along with consideration of the benefits anticipated from the railroad when constructed was more than nominal, although not conclusive of the intent of the parties). When the language of the deed is unambiguous, nominal consideration will not defeat a valid deed. *See Kingsland*, 456 So.2d at 502. Thus, given the unambiguous granting language, we conclude the trial court did not err in determining this deed conveyed fee simple to the railroad.

### 4. Category 8: Map 20, Parcel 19

Finally, the Subclass contends that the deed to parcel 19 on map 20 conveyed only an easement because the grant was made after surveying and construction of the railroad had begun. Thus, argues the Subclass, the railroad could not receive a greater interest than it could obtain through condemnation proceedings, and in condemnation proceedings, the railroad was limited to an easement.

First, we note that the deed in question conveys and warrants a strip of land to the railroad. The term "right of way" and any other limiting language are absent from the instrument. Thus, it is clear from the four corners of the instrument that the grantor intended to convey a fee simple interest to the railroad. As noted earlier, we cannot consider extrinsic evidence in construing deeds where the language is clear and unambiguous.

## B. CSX Claims

CSX challenges the trial court's determination that the deeds to parcels 4 and 9 on map 21 convey only an easement.

### 1. Category 4: Map 21, Parcel 9

 CSX contends that the trial court erred in determining that the deed to parcel 9 on map 21 was ambiguous due to the presence of the term "right of way" in the granting and descriptive clauses and, therefore, conveyed an easement. The deed provides that the party, "for and in consideration of a substantial 7 strand barbed wire fence being built on the lines of the right of way described below and the further consideration of one dollar ... do[es] hereby convey and warrant ... the real estate...." Record at 506. In the descriptive clause, the railroad agreed to keep the fence "along the right of way aforesaid" in good repair "so long as said company, its successors or assigns shall continue to operate said road." *Id.* Furthermore, the deed indicates that should the railroad fail to keep the fence in good repair, then the "deed shall be void and of no effect." *Id.*

CSX correctly contends that the granting language conveys and warrants real estate. Nevertheless, we agree with the trial court's conclusion that the deed is ambiguous. The deed contains language indicating that the grantor intended to convey the land only for "so long as [the railroad] continue[s] to operate." Also, the grantor specifically indicated that should the railroad fail to maintain the fence along the corridor, the deed would be void. Such language creates an ambiguity as to whether the grantor intended to convey the land in fee simple. Where as here, the deed was prepared by the railroad, the ambiguity is construed in favor of the grantor and against the drafter. *See Hefty,* 680 N.E.2d at 855. Thus, the deed conveys an easement.

### 2. Category 5: Map 21, Parcel 4

CSX contends that the trial court erred in finding the deed to parcel 4 on map 21

ambiguous. The granting clause of the deed is as follows: "party of the first part, for and in consideration of the benefits to accrue to me from the location and construction of its railroad, and the sum of One Thousand One Hundred Dollar[s] ... do hereby convey unto said party of the second part, its successors and assigns, a strip of land...." Record at 490. There is no limiting language in the three clauses of the deed. The caption on the cover of the deed, however, is "Right of Way Deed." The trial court concluded that given the absence of the statutory language of conveyance for a fee simple, "and warrant," in the granting clause, along with the caption on the cover of the deed, the conveyance was ambiguous and, therefore granted only an easement.

 CSX contends that the absence of the language "and warrant" does not create an ambiguity; rather, it merely indicates that the grantor made no warranties as to the quality of his title. Appellee's Br. at 24. We agree with CSX. Despite the absence of the warrant language, the deed "conveys" a strip of land to the railroad. The deed is void of any language limiting the use of the land by the railroad. Thus, the deed is unambiguous. As discussed *supra,* the title on the cover of a deed is of no effect where the conveyance is clear. *See Union Pacific Railroad Co.,* 490 N.W.2d at 465. Furthermore, the redaction of "and warrant" from the deed does not defeat the conveyance. On the contrary, the language indicates the grantor's intent to convey the land without warranting his title. *See Bethell v. Bethell,* 54 Ind. 428 (1876) ("The words, 'grant, bargain, sell and convey,' do not imply any covenants in a conveyance in fee ...."); *see also Coleman,* 294 Ark. at 638, 745 S.W.2d at 625 (rejecting appellant's argument that the use of quitclaim deeds indicates the grantor's intent to convey an easement and noting that that quitclaim deeds, like warranty deeds, are commonly used to convey fee simple titles).

## II. Due Process

CSX contends that its due process rights were violated by the trial court's entry of judgment in favor of the Subclass in the absence of the required proof to quiet title. CSX further contends that the "claims process" referred to by the trial court was unconstitutional. Appellee's Br. at 33–59. At trial, CSX moved for an involuntary dismissal based on the Subclass's failure to offer proof of title sufficient to quiet title in its favor. The trial court denied CSX's motion, stating that "the record contains evidence that would support a judgment in favor of the Carmel Subclass *as a class* on its claim to quiet title as against CSX as to one or more parcels of the real estate involved in this proceeding." Record at 2899.

Initially, we note that the Subclass sought declaratory relief.[6] Specifically, the Subclass sought a judgment that (1) the interest obtained by CSX was a right-of-way easement; (2) CSX's abandonment of the right of way terminated its interest therein; and (3) CSX has no interest to convey to the City of Carmel. Thus, the Subclass asserts that CSX does not have an interest in the land. The Subclass did not request that the trial court determine the actual present ownership of any of the properties in question. Record at 49, 102, 2147. Furthermore, throughout the proceedings below, the Subclass maintained its claim for declaratory relief and did not seek to quiet title. For instance, in its pretrial notice filed on June 16, 1998, the Subclass stated:

> Other issues that have been raised, including proof of title for each owner of underlying or adjacent land will not be necessary for complete relief to the Subclass[7] for the following reasons:
>
> 1. The Third Amended Class Action Complaint includes a claim entitled, "Removal of Cloud on Title," and prays for declaratory judgment removing the cloud on title to Plaintiffs' and Class Members' land created by CSX and declaring that CSX has no interest in such land. The complaint requests declaratory relief but does not invoke the Indiana quiet title statute and does not seek a statutory quiet title adjudication.
>
> 2. Plaintiffs' Motion for Creation of Subclass, the Court's Order of December 19, 1996 creating the Subclass, and the Court-approved Notice to the Subclass, like the Complaint, anticipate a declaration of whether the rights that CSX obtained to the right-of-way land survived abandonment and do [not] invoke the Indiana quiet title statute and do not seek a statutory quiet title adjudication.

Record at 2147. Moreover, in the Joint Stipulation filed on September 22, 1998, the parties indicated that "neither the filing of this Joint Stipulation and Order nor its acceptance and entry by the Court shall act as a waiver of any parties' right to appeal the Revised Instruments Order or

---

6. Specifically, the complaint stated:
 *COUNT II*
 (Removal of Cloud on Title)
 . . . .
 29. The claims by CSX has [sic] created a cloud on the title to the land of the Named Plaintiffs and Class Members.
 WHEREFORE, the Named Plaintiffs, on behalf of the Class Members and themselves, pray: (1) for a *declaratory judgment* removing the cloud on title to Plaintiffs' and Class Members' land and declaring that CSX has no interest in such land; and (2) all other just and proper relief.
 Record at 307–08 (emphasis added).

7. The Subclass noted the following:

> Subclass counsel will offer evidence of the specific location of parcels and the specific identity of deeds held by Subclass Members, through the testimony of a surveyor or otherwise, if CSX argues and the Court orders that such specific proof is required *even though a statutory quiet title judgment is not sought*. However, Subclass Counsel does not believe such evidence is necessary and should not be required for the purpose of the Subclass. This Court's August 4, 1997 Order on Burden of Proof *does not require such proof for the limited declaratory relief sought* by the Subclass.
> Record at 2147 (emphases added).

the Burden of Proof Order." Record at 2790–91. Thus, at the time of trial, the Subclass maintained its right to appeal the Order on Burden of Proof and thereby indicated it's claims were limited to declaratory relief.

■ We conclude that the trial court granted declaratory relief to the Subclass and did not quiet title in individual members of the Subclass. CSX contends, however, that the court quieted title in the members of the Subclass without requiring them to prove title to the land, as required by the Order on Burden of Proof. The Order on Burden of Proof sets forth the necessary elements for the Subclass to *quiet title*. Since the Subclass sought only declaratory relief, the Order on Burden of Proof is not applicable.

Under the Uniform Declaratory Judgment Act, courts

> have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect. The declaration has the force and effect of a final judgment or decree.

IND.CODE § 34–14–1–1. The Act provides that "[a]ny person interested under a deed . . ., or whose rights, status, or other legal relations are affected by a statute, . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." IND.CODE § 34–14–1–2. As this court stated in *Ember v. Ember:*

> The test to determine the propriety of declaratory relief is whether the issuance of a declaratory judgment will effectively solve the problem involved, whether it will serve a useful purpose, and whether or not another remedy is more effective or efficient. The determinative factor of this test is whether the declaratory action will result in a

just and more expeditious and economical determination of the entire controversy.

720 N.E.2d 436, 439 (Ind.Ct.App.1999) (citations omitted).

Here, because the Subclass is seeking the construction of deeds, it may pursue declaratory relief. Further, declaratory relief will resolve a portion of the case, resulting in a more efficient resolution of the entire controversy. Such benefit cannot be ignored particularly in a class action lawsuit.

Given the fact that CSX's interest in the land was extinguished upon abandonment of the easement, CSX had no interest to convey regardless of who the actual fee simple owner may be. We find the decision of the Illinois Appellate Court in *AG Farms, Inc. v. American Premier Underwriters, Inc.,* 296 Ill.App.3d 684, 231 Ill. Dec. 109, 695 N.E.2d 882 (1998), *reh'g denied,* particularly helpful. There, landowners sought declaratory relief against railroad's successor in interest. Specifically, they asserted that the railroad had an easement which extinguished upon abandonment of the right-of-way and therefore, the railroad had no interest to convey to the defendant. The defendant claimed that declaratory judgment was improper because it did not resolve the controversy: title to the parcels in question. The trial court held that the dispute was not simply whether the defendants had a right of possession, but rather who actually had title to the property. The trial court concluded that such a dispute could not be resolved " 'without [the] case evolving into, in effect, individual cases of quiet title.' " *AG Farms, Inc.,* 231 Ill.Dec. 109, 695 N.E.2d at 887–88. On appeal, the court concluded that declaratory judgment would resolve part of the dispute because it would determine that the defendant had no rights, even if it would not determine precisely who did own the property. Thus, the court held that a declaratory judgment, determining the rights of the

defendants in isolation without determining the rights of the defendants as against any particular adverse claimant, was appropriate. *AG Farms, Inc.*, 231 Ill.Dec. 109, 695 N.E.2d at 890.

The Court of Appeals of South Carolina also addressed a similar issue in *Eldridge v. City of Greenwood*, 331 S.C. 398, 503 S.E.2d 191 (S.C.Ct.App.1998), *reh'g denied, cert. denied*. There, the city contended that the landowners failed to meet their burden of proof for a quiet title action, and therefore, the trial court could not quiet title in favor of the landowners. Specifically, it argued that the landowners could only recover upon the strength of their title, not simply on the weakness of the city's title. The city contended that " 'the Plaintiffs have not proven that any of the Plaintiffs owned particular pieces of property adjacent to the Railroad right-of-way.' " 503 S.E.2d at 211. On appeal, the court noted that the trial court did not quiet title in favor of any of the landowners. Rather the trial court stated: " 'If the Railroad had no title as to any one of these three segments, then the Railroad had no title to convey to the City, County, or Highway Department, and a decision must be made as to whether that title resides in the adjacent property owners . . ., or in the heirs of the original property owners . . . .' " *Id.* Hence, the appellate court concluded that the trial court's order was limited to determination of the nature of the railroad's interest and left for later determination which landowners were entitled to the particular parcels of land.

Here, the trial court determined the nature of the interest conveyed at the summary judgment stage. As the Subclass sought only declaratory relief determining the nature of the interest held by the parties, the trial court lacked jurisdiction to act further on the landowners' count requesting removal of cloud on title once the nature of the interests held by the parties was determined and summary judgment was granted.

Therefore, we conclude that CSX's due process rights were not violated. The trial court's order was confined to a determination of the nature of the railroad's interest and did not determine the rights of the railroad as against any particular adverse claimant. *See AG Farms, Inc.* at 890.

### Conclusion

In interpreting the deeds, the trial court correctly determined the nature of the conveyances with the exception of the deed to parcel 4 on map 21. Therefore, we reverse the trial court's grant of summary judgment in favor of the Subclass and grant summary judgment to CSX on the deed to parcel 4 on map 21 as the deed conveyed the land in fee simple. In all other respects, the trial court's summary judgment order is affirmed.

Finally, CSX was not denied due process. This cause was filed as a declaratory judgment action. The Subclass requested declaratory judgment. In its pretrial notice, the Subclass indicated that the issue for trial was declaratory judgment. The Subclass continually sought declaratory relief at all stages of the proceedings. Even in the joint stipulation, the Subclass reserved the right to contest the burden of proof order, which further indicates this action was limited to declaratory relief. Here, the plaintiffs asked for declaratory judgment, and the trial court granted such relief at the summary judgment stage. While the parties did at times commingle declaratory judgment with the language of a quiet title action, at no time did the Subclass seek to quiet title. Therefore, we find no violation of CSX's due process rights.

Judgment affirmed in part and reversed in part.

NAJAM, J., and RILEY, J., concur.