



FILED

Feb 04 2025, 8:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Linda F. Slavick Trust,

*Appellant-Plaintiff*

v.

Christmas Lake Properties Association, Inc.,

*Appellee-Defendant*

---

February 4, 2025

Court of Appeals Case No.
24A-PL-1746

Appeal from the Spencer Circuit Court

The Honorable Jon A. Dartt, Judge

Trial Court Cause No.
74C01-2007-PL-277

---

**Opinion by Judge Foley**
Judges Bailey and Bradford concur.

**Foley, Judge.**

[1] Linda F. Slavick Trust ("Landowner") appeals from the entry of summary judgment in favor of Christmas Lake Properties Association, Inc. ("the HOA") on claims and counterclaims related to whether Landowner was entitled to exclusive waterfront rights under covenants and restrictions adopted in 2005 ("the 2005 Covenants"). We address the following consolidated and restated issues:

> I. Whether we should dismiss for lack of statutory notice;
>
> II. Whether the trial court erred in denying Landowner's first motion for summary judgment;
>
> III. Whether the 2005 Covenants conferred exclusive waterfront rights to Landowner;
>
> IV. Whether the judgment constituted a judicial taking; and
>
> V. Whether Landowner was entitled to summary judgment on the HOA's counterclaim regarding noncompliance with architectural review requirements as to a common area.[1]

[2] Although we find that Landowner, rather than the HOA, was entitled to summary judgment on the architectural review counterclaim, we conclude that

---

[1] Although several other claims and counterclaims were litigated below—many of which turned on the proper interpretation of the 2005 Covenants—Landowner does not challenge the resolution of other claims or counterclaims. We therefore address herein only the specific issues presented in the appellate briefing.

Landowner identified no other error in the judgment. We therefore affirm in part, reverse in part, and remand for entry of summary judgment for Landowner on the HOA's counterclaim regarding architectural review.

## Facts and Procedural History

[3] Landowner acquired four contiguous lots in Santa Claus, Indiana, near Christmas Lake ("the Lake") in 2008. Two of those lots ("the Polar Shores Lots") are Lot 30 and the East Half of Lot 31 in an original subdivision known as the Polar Shores Subdivision. The other two lots ("the New Lots") are Lot 30A and the East Half of Lot 31A in an adjacent subdivision known as the Polar Shores Addition to the Polar Shores Subdivision ("the Addition"), later platted in 1973. *See* Appellant's App. Vol. 3 pp. 91–92 (depicting lots). Both subdivisions are in a residential area known as Christmas Village, which is governed by a single homeowners association, the HOA. This appeal concerns only the New Lots.

[4] The New Lots' eastern boundary abuts an area platted as "Tract B," which is owned by the HOA. A portion of the Lake lies within Tract B. The HOA owns and maintains several docks on Tract B. One of the boat docks is located on the same side of the lake as the New Lots (the "Dock"). Landowner began using and maintaining the Dock when it acquired the New Lots in 2008. As visual aids, we provide the following images excerpted from the HOA's brief:





Appellee's Br. p. 7 (citing Appellant's App. Vol. 3 pp. 91–92, 115).[2]

---

[2] The top two images depict portions of the plats, which the HOA annotated with shading and arrows. *Compare* Appellees' Br. p. 7 *with* Appellant's App. Vol. 3 pp. 91–92, 115).  The lower image is a satellite

[5]   The use and enjoyment of Tract B and the Dock is governed by the 2005 Covenants, which were recorded on May 10, 2005. The 2005 Covenants address, among other things, the rights of waterfront lots and the HOA's control over common areas. Section 4(b) of the 2005 Covenants provides:

> Each Lot Owner adjoining the water front shall have the exclusive right to use and enjoy the land lying between the Lot line and the Lake shore line; provided, however, that the rights hereby granted to the Lot Owner to said water front and Lake shore area, shall not conflict with and shall be subordinate to the rights of the Association to do all things necessary, or desirable, to protect, preserve and maintain the Lake and said water front and Lake shore area.

Appellant's App. Vol. 2 p. 29.

[6]   The instant dispute began in April and May of 2020 when Landowner attempted to expel individuals from using the Dock and walking on Tract B between the New Lots and the Lake. Landowner claimed they held exclusive rights to the use and control of the Dock and the portion of Tract B between the New Lots and the lake ("Disputed Area"). On June 2, 2020, the HOA advised Landowner that the HOA, not Landowner, had exclusive rights to the use and enjoyment of the Disputed Area. On June 19, 2020, Landowner installed poles and a chain to block access to the Disputed Area, then added Christmas lights

---

image, which the HOA annotated in a way that identifies the Disputed Area and the Dock. *See* Appellees' Br. p. 7. Although the satellite image was not part of the designated evidence, nor was any plat annotated in the manner shown, the HOA provided these aids in its appellate briefing and Landowner does not challenge the accuracy of the visual aids in serving to identify the Disputed Area and the Dock. *See* Reply Br. pp. 5–6.

to the chain on July 13, 2020. The HOA removed the installed items on July 16, 2020.

[7] Following these events, on July 20, 2020, Landowner filed a seven-count complaint against the HOA. Counts I and II alleged trespass—Count I specifically challenged the HOA's entry into the Disputed Area on July 16, 2020, while Count II more broadly alleged interference with Landowner's purported exclusive rights to the Disputed Area. Count III alleged conversion based on the HOA's removal of the poles, chain, and lights. Count IV alleged that the HOA breached the 2005 Covenants. In Count V, Landowner sought a declaration that the New Lots were waterfront lots, and therefore, Landowner was entitled to the exclusive use and enjoyment of the Disputed Area. Count VI asserted equitable estoppel, alleging Landowner paid a premium price for the New Lots based on its belief the New Lots carried waterfront rights, and that the HOA's silence constituted acquiescence. Finally, Count VII alleged a statutory violation premised on differential treatment of members of the HOA. The HOA responded with five counterclaims. Counts I and II alleged trespass based on Landowner's assertion of exclusive rights to the Disputed Area. Count III alleged that Landowner's use of the Disputed Area constituted conversion. Count IV alleged that Landowner breached architectural review requirements by erecting structures without approval. As to Count V, the HOA sought a declaration that, among other things, the New Lots were not waterfront lots.

[8] Landowner moved for partial summary judgment on October 1, 2021, seeking summary judgment on Counts I through V of the complaint and all counts of the countercomplaint. Although the HOA did not file a response within the thirty-day response period set forth in Trial Rule 56, the HOA sought and received an extension of time to respond. On June 23, 2022, the trial court denied Landowner's motion for partial summary judgment without explanation. Following unsuccessful mediation, Landowner filed a second motion for partial summary judgment on November 7, 2023. The HOA responded with a countermotion for summary judgment on February 2, 2024, seeking summary judgment on all claims and counterclaims. On May 15, 2024, the trial court entered summary judgment for the HOA, concluding that the New Lots were "not 'waterfront lots' pursuant to the covenants, pertinent plats, and common sense and logic." *Id.* at 12–13. The court determined that Landowner "ha[d] the right to use and enjoy the disputed land area and disputed boat dock alongside [the HOA] and the rest of the owners of lots in Christmas Lake Village" but was "not entitled to the exclusive right to use and enjoy the disputed land area or disputed dock." *Id.* Landowner now appeals.

## Discussion and Decision

[9] We review summary judgment de novo, applying the same standard as the trial court. *Korakis v. Mem'l Hosp. of S. Bend*, 225 N.E.3d 760, 764 (Ind. 2024). Summary judgment is proper only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The

moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See id.*; *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). If the moving party satisfies this burden, the burden then shifts to the non-moving party to come forward with contrary evidence demonstrating that there remains a genuine issue of material fact. *See* T.R. 56(C); *Goodwin*, 62 N.E.3d at 386. When reviewing summary judgment, we construe all facts and reasonable inferences in favor of the non-moving party. *Red Lobster Rests. LLC v. Fricke*, 234 N.E.3d 159, 165 (Ind. 2024).

[10] In this case, summary judgment largely turned on the determination of whether the New Lots were waterfront lots based on the language of Landowner's deed, the recorded plat documents, and the 2005 Covenants. The interpretation of these written instruments presents a pure question of law that is appropriate for summary judgment. *See, e.g.*, *Keene v. Elkhart Cnty. Park & Recreation Bd.*, 740 N.E.2d 893, 896 (Ind. Ct. App. 2000). "The object of deed construction is to ascertain the intent of the parties and where there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone." *Clark v. CSX Transp., Inc.*, 737 N.E.2d 752, 757 (Ind. Ct. App. 2000), *trans. denied*. That said, "[w]hen lands are granted according to a plat, the plat becomes part of the grant or deed by which the land is conveyed, with respect to the limitations placed upon the land." *King v. Ebrens*, 804 N.E.2d 821, 827 (Ind. Ct. App. 2004) (quoting *Grandview Lot Owners Ass'n, Inc. v. Harmon*, 754 N.E.2d 554, 557 (Ind. Ct. App. 2001)). So long as the terms of the deed are unambiguous, "we apply them according to their . . . ordinary meaning."

*Keene*, 740 N.E.2d at 897. We presume the parties intended for every part of a deed to have some meaning, and we favor a construction that reconciles and harmonizes the entire deed. *Id.*

Covenants and restrictions—such as the 2005 Covenants—are contracts concerning land, and our interpretation focuses on the intent of the parties as expressed in the written instrument. *See, e.g.*, *id.* at 896–97. "When courts are called upon to interpret restrictive covenants, they are to be strictly construed, and all doubts should be resolved in favor of the free use of property and against restrictions." *Drenter v. Duitz*, 883 N.E.2d 1194, 1199 (Ind. Ct. App. 2008) (quoting *Johnson v. Dawson*, 769, 772–73 (Ind. Ct. App. 2006)). "We read the language of real covenants in the ordinary and popular sense, and not in a technical or legal sense." *Keene*, 740 N.E.2d at 897. If we encounter ambiguity, the proper interpretation remains a legal question if pertinent facts are undisputed and the ambiguity can be resolved through principles of contract construction. *See Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1133 (Ind. 1995).

## I.    Grounds for Dismissal

We first address the HOA's contention that we should dismiss the instant litigation due to Landowner's failure to comply with procedures set forth in Indiana Code chapter 32-25.5-5 related to lawsuits involving homeowners and homeowners associations. Pursuant to this chapter, before a claimant may initiate legal proceedings, the claimant must give the other party written notice that (1) describes the nature of the claim and the parties involved; (2) states the

legal basis of the claim; (3) proposes how to resolve the claim; (4) advises of the right to request a meeting about the claim; and (5) provides contact information for requesting a meeting. Ind. Code § 32-25.5-5-10. If a meeting is requested, the parties must meet in person to attempt resolution through good faith negotiation. I.C. § 32-25.5-5-11. A claimant generally may pursue formal legal action only after following these statutory procedures. I.C. § 32-25.5-5-13.

[13] The HOA argues that Landowner failed to comply with these statutory procedures, and therefore, we should dismiss the litigation. Notably, however, because the HOA failed to raise this issue in proceedings before the trial court; participated in over three years of litigation, including mediation; and there is no indication it followed the same procedures in pursuing the counterclaims, we conclude that the HOA failed to preserve this argument. *See, e.g.*, *Endres v. Ind. State Police*, 809 N.E.2d 320, 322 (Ind. 2004) (discussing principles of issue preservation). We therefore proceed to the merits of the instant appeal.

## II.   First Summary Judgment Motion

[14] Landowner claims the trial court erred by permitting the HOA's belated response to its first motion for partial summary judgment. Under Trial Rule 56, a party has thirty days to respond to a motion for summary judgment. Our Supreme Court reads Trial Rule 56 as establishing a bright-line rule such that, "[w]hen a nonmoving party fails to respond to a motion for summary judgment within [thirty] days . . . the trial court cannot consider summary judgment filings of that party subsequent to the [thirty]-day period." *Mitchell v. 10th & The*

*Bypass, LLC*, 3 N.E.3d 967, 972 (Ind. 2014) (quoting *Borsuk v. Town of St. John*, 820 N.E.2d 118, 124 n.5 (Ind. 2005)). This rule applies even when a filing is one day late. *See Starks Mech., Inc. v. New Albany-Floyd Cnty. Consol. Sch. Corp.*, 854 N.E.2d 936, 940 (Ind. Ct. App. 2006). However, when there is no proper response, summary judgment "shall not be granted as of course[.]" T.R. 56(C); *see Murphy v. Curtis*, 930 N.E.2d 1228, 1234 (Ind. Ct. App. 2010), *trans. denied*. Rather, the court must decide summary judgment on the merits of the motion. *See* T.R. 56(C). In other words, under Trial Rule 56(C), the trial court "shall make its determination from the evidentiary matter designated to the court."

[15] We agree with Landowner that the trial court erroneously granted the HOA leave to file a belated response to Landowner's motion. As a result, we must not consider the HOA's response and designated evidence in opposition of the first motion. However, we must still determine whether Landowner would have been entitled to partial summary judgment on the merits of that motion.

[16] Landowner has not identified reversible error. Below, Landowner sought partial summary judgment on Counts I through V of its complaint and all of the HOA's counterclaims. To obtain partial summary judgment on these counts, Landowner needed to establish that Landowner had exclusive control of the Disputed Area.[3] In seeking partial summary judgment, Landowner designated (1) its deed, (2) the 2005 Covenants, and (3) an affidavit concerning, among

---

[3] To the extent the counterclaim regarding architectural review requirements did not turn on the scope of Landowner's rights, as we discuss later, Landowner is entitled to summary judgment on that counterclaim.

other things, factual matters related to Landowner's acquisition of the New Lots and the use and maintenance of the Dock. *See* Appellant's App. Vol. 2 pp. 57–58 (designation of evidence); 21–22 (deed); 23–24 (the 2005 Covenants); 67–69 (the affidavit). Landowner's deed expressly incorporated the provisions of the recorded plat, with the deed stating that the conveyance was "subject to the covenants and restrictions set out therein." *Id.* at 21. Critically, however, Landowner did not designate the plat that its own deed incorporated. *See id.*; *cf. King*, 804 N.E.2d at 827 ("[T]he plat becomes part of the grant or deed by which the land is conveyed[.]" (quoting *Grandview*, 754 N.E.2d at 557)).

[17] A party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact on the dispositive issues. T.R. 56(C); *Lake Imaging, LLC v. Franciscan All., Inc.*, 182 N.E.3d 203, 206 (Ind. 2022). This burden includes designating sufficient evidence to establish a prima facie case on each element for which the movant carries the burden of proof at trial. *See Lake Imaging*, 182 N.E.3d at 206. Here, Landowner failed to designate the plat, which set forth material information, including the location of the New Lots and Tract B. Thus, regardless of the belated response, Landowner did not carry its initial burden of establishing a prima facie case that Landowner was entitled to a judgment as a matter of law. We therefore conclude that the trial court properly denied Landowner's first motion for partial summary judgment. *See Korakis*, 225 N.E.3d at 764 (noting that we may affirm summary judgment on any basis supported by the record).

## III. Interpretation of the 2005 Covenants

[18] We turn to the heart of Landowner's appeal, which is whether, as owner of the New Lots, Landowner was entitled to exclusive use and enjoyment of the Disputed Area pursuant to the 2005 Covenants. As earlier mentioned, the proper interpretation of a covenant presents a question of law that we review de novo. *King*, 804 N.E.2d at 826. We begin our analysis by observing that the 2005 Covenants expressly incorporated plat documents by (1) defining "Lot" as "a platted lot as shown on the Plat," (2) defining "Plat" as "the plats of [Christmas Lake Village] recorded in the Office of the Recorder of Spencer County, Indiana, for each of the subdivisions of Christmas Lake Village," and (3) referring to certain areas "shown on any Plat" in defining "Common Areas." Appellant's App. Vol. 2 pp. 26–28. Although Landowner failed to designate pertinent plat documents in its first motion for summary judgment, both parties designated plat documents in connection with their subsequent summary judgment filings. *See* Appellant's App. Vol. 3 pp. 32–33, 91–92, 115. Those plat documents established that the New Lots abutted Tract B, which formed a strip of land between the New Lots and the Lake. *See id.* at 92.

[19] Considering the configuration of the New Lots, Tract B, and the Lake as set forth in the plat documents, the central issue is whether the New Lots are deemed waterfront lots based on Section 4(b) of the 2005 Covenants, which conferred waterfront rights to the lot owner. Section 4(b) provides as follows:

> Each Lot Owner adjoining the water front shall have the
> exclusive right to use and enjoy the land lying between the Lot

line and the Lake shore line; provided, however, that the rights hereby granted to the Lot Owner to said water front and Lake shore area, shall not conflict with and shall be subordinate to the rights of the Association to do all things necessary, or desirable, to protect, preserve and maintain the Lake and said water front and Lake shore area.

Appellant's App. Vol. 2 p. 29. In short, Section 4(b) established that the "exclusive right to use and enjoy the land between the Lot line and the Lake shore line" applied only to "[e]ach Lot Owner adjoining the water front[.]" *Id.*

[20] The effect of Section 4(b) was to identify two categories of lot owners, (1) waterfront and (2) non-waterfront. Section 4(b) did so by using the terms "water front" and "adjoining," which were not otherwise defined. *See id.* As earlier noted, "[w]e read the language of real covenants in the ordinary and popular sense, and not in a technical or legal sense." *Keene*, 740 N.E.2d at 897. The ordinary and popular meaning of "waterfront" is "land, land with buildings, or a section of a town fronting or abutting on a body of water." *Waterfront*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/waterfront [https://perma.cc/DNA2-D6X6] (last visited Jan. 22, 2025). Moreover, the ordinary and popular meaning of "adjoining" is "touching or bounding at a point or line." *Adjoining*, https://www.merriam-webster.com/dictionary/adjoining [https://perma.cc/3273-HLTX] (last visited Jan. 22, 2025).

[21] Based on the language used, Landowner would be entitled to the exclusive use and enjoyment of the Disputed Area only if it establishes that (1) the New Lots

share a common boundary with the Lake and (2) the Disputed Area is "land between the Lot line and the Lake shore line." Appellant's App. Vol. 2. p. 29. Landowner proffers a competing reading of the 2005 Covenants, pointing out that Section 4(b) provides "the exclusive right to use and enjoy *the land lying between the Lot line and the Lake shore line*[.]" Appellant's App. Vol. 2 p. 29 (emphasis added). Focusing on this language, Landowner construes Section 4(b) differently, arguing that the language "necessarily means that there must be land lying between the lot line of a lot and lake shore line of [the] Lake in order for the Lot to be a 'Waterfront Lot.'" Reply Br. p. 5. That is, Landowner implicitly concedes that the New Lots do not adjoin the waterfront, arguing: "If a lot actually adjoins [the] Lake[,] . . . then there is no 'land lying between the lot line and [the] Lake,' and absolutely no need for a provision granting the [exclusive waterfront rights], as the lot owner . . . already has these rights to the property to the exclusion of all others." *Id.* We disagree with the proffered reading, as we are not at liberty to simply disregard the phrase "adjoining the water front[.]" Appellant's App. Vol 2 p. 29. Rather, in construing a covenant, we must attempt to harmonize the provisions "so as not to render any terms ineffective or meaningless[.]" *Johnson v. Dawson*, 856 N.E.2d 769, 773 (Ind. Ct. App. 2006). If doing so presents doubts, "all doubts should be resolved in favor of the free use of property and against restrictions." *Id.* Applying the applicable standard here, we read Section 4(b) to clearly grant waterfront rights to the owners of lots along the lakeshore, whether the waterline of the Lake, due to fluctuations in water levels, is located within a waterfront lot or a parcel owned

and controlled by the HOA. That is, Section 4(b) clarifies that waterfront lot owners enjoy exclusive waterfront rights regardless of the volume of the Lake.

[22] The plat documents reflect that the New Lots do not share a common boundary with the waterfront. Rather, the eastern edge of the New Lots abuts Tract B, which forms a strip of land between the New Lots and the Lake. Appellant's App. Vol. 3 pp. 89–91. Because Tract B lies between the New Lots and the waterfront, the New Lots do not "adjoin" the waterfront, and under the clear and unambiguous language of Section 4(b) of the 2005 Covenants, Landowner was not granted exclusive rights to use and enjoy the Disputed Area.

## IV. Judicial Taking

[23] Based on the trial court's determination that Landowner did not have exclusive rights to the waterfront or the dock, Landowner argues that the unfavorable judgment amounted to a judicial taking. Both Article 1, Section 21 of the Indiana Constitution and the Fifth Amendment to the United States Constitution, incorporated to the states via the Fourteenth Amendment, prevent the taking of private property for public use without "just compensation." These provisions are "textually indistinguishable and are to be analyzed identically." *State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210 (Ind. 2009). In general, a judicial taking occurs when a court decision "declares that what was once an established right of private property no longer exists." *Town of Ellettsville v. DeSpirito*, 111 N.E.3d 987, 996 (Ind. 2018) (quoting *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envt'l Prot.*, 560 U.S. 702, 715 (2010)).

[24] Landowner's constitutional claim fails because, here, the summary judgment decision interpreted and clarified the scope of Landowner's existing rights under the 2005 Covenants and did not eliminate "an *established* right of private property[.]" *Id.* (emphasis added). Indeed, the judgment was that Landowner never possessed the exclusive rights it claimed. In short, Landowner cannot establish a judicial taking based on a mistaken understanding of its rights. We therefore conclude that Landowner has failed to identify a judicial taking.

## V. Architectural Review Requirements

[25] The trial court granted summary judgment to the HOA on its counterclaim that Landowner violated Section 10 of the 2005 Covenants by installing poles and a chain on Tract B without approval from the Architectural Review Board. On appeal, Landowner argues that it was instead entitled to summary judgment on the counterclaim because Section 10's architectural review requirements applied only to a "Lot" and Tract B was not a "Lot" as defined in the 2005 Covenants.

[26] We agree with Landowner. Turning to the 2005 Covenants, Section 10 established requirements for structures "erected, placed[,] or altered on any Lot." Appellant's App. Vol. 3 p. 104. The 2005 Covenants defined the term "Lot" as "a platted lot as shown on the Plat." *Id.* at 97. Moreover, the term "Plat" was defined as "the plats of [Christmas Lake Village] recorded in the Office of the Recorder of Spencer County, Indiana, for each of the subdivisions of Christmas Lake Village." *Id.* at 98. Furthermore, the designated evidence established that the recorded plats treated Tract B distinctly from numbered

residential lots. That is, rather than being designated as a "Lot" or assigned a lot number, Tract B appeared as a separate parcel reserved to the HOA. *See id.* at 89–91. This distinct treatment of the common area indicates that Tract B was not a "Lot" for purposes of the architectural review requirements. Thus, the HOA failed to establish that Landowner needed to obtain prior approval.

[27] Based on our interpretation of the 2005 Covenants, we reverse summary judgment for the HOA on its architectural review counterclaim and we remand for entry of summary judgment in favor of Landowner on this counterclaim.

## Conclusion

[28] The HOA waived its contention that dismissal is warranted based on a lack of statutory notice. Moreover, the trial court did not err in denying Landowner's first motion for summary judgment. Turning to the subsequent competing motions for summary judgment, we conclude that the 2005 Covenants did not confer exclusive waterfront rights to Landowner and that the interpretation of Landowner's existing rights did not amount to a judicial taking. As to the HOA's counterclaim concerning architectural review requirements, we reverse and remand for entry of summary judgment in favor of Landowner. Because Landowner identified no other error in the judgment, we otherwise affirm.

[29] Affirmed in part, reversed in part, and remanded.

Bailey, J. and Bradford, J., concur.

ATTORNEY FOR APPELLANT

Kevin R. Patmore
Patmore Law Office
Santa Claus, Indiana


ATTORNEYS FOR APPELLEE

Garrett M. Lewis
Karl G. Popowics
Goodin Abernathy, LLP
Indianapolis, Indiana