## PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. WILSON ET AL.

[No. 4,973.    Filed December 16, 1904.]

1. PLEADING.—*Demurrer.*—*Joint.*—Where "the defendant demurs to the plaintiffs' third and fourth paragraphs of complaint, and, for cause of demurrer, says said amended paragraphs of complaint do not, nor does either paragraph thereof, state facts sufficient to constitute a cause of action," such demurrer is joint, and an assignment of error challenging one of such paragraphs raises no question. p. 325.

2. COVENANTS.—*Private Railroad Crossing.*—*Whether Runs with Land.*—Where, in a deed of conveyance of a railroad right of way, it is provided that the railroad company shall "make for the grantors one farm crossing," such covenant runs with the land and may be enforced by the grantors or their grantees against such railroad company or its grantees. p. 325.

3. SAME.—*Private Railroad Crossing.*—*Breach.*—Where a railroad company received a deed for its right of way, which was beneficial, and recorded same, such deed containing a covenant "to make for the grantors one farm crossing," and a crossing was maintained by the companies owning such road up to the destruction of such crossing in 1901, and after such destruction such company pretended to supply a crossing at another place, such facts show that such deed was accepted, and that such covenant was for the maintenance as well as the making of the crossing. p. 327.

4. SAME. — *Private Railroad Crossing.* — *Breach.*—*Damages.*—The measure of damages for a breach of covenant to erect and maintain a private railroad crossing is the amount it will cost to make a new crossing, together with damages for any loss of the use of the land on the other side of such railroad during the period of deprivation to the time of the trial. p. 328.

From Blackford Circuit Court; *Edwin C. Vaughn,* Judge.

Action by James W. Wilson and another against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company for damages for breach of covenant. From a judgment for plaintiffs, defendant appeals. *Reversed.*

*G. E. Ross,* for appellant.

*William J. Houck, Waltz & Secrest* and *W. M. Amsden,* for appellees.

Black, J.—In the first specification in the appellant's assignment of errors it is sought to question the action of the court below "in overruling the demurrer to the third paragraph of the amended complaint," and in the second specification the appellant assigns error "in overruling the demurrer to the fourth paragraph of the amended complaint."

1. The court sustained a demurrer to the first and second paragraphs of the complaint. The demurrer which was overruled, omitting the title and the signature, was as follows: "The defendant demurs to the plaintiffs' third and fourth paragraphs of complaint, and, for cause of demurrer, says that said amended paragraphs of complaint do not, nor does either paragraph thereof, state facts sufficient to constitute a cause of action." The demurrer was addressed to the two paragraphs jointly, and an assignment of error purporting to question the action of the court in overruling the demurrer as to one of the paragraphs does not present any matter for decision here.

2. It is also assigned that the court erred in overruling the appellant's motion for a new trial. The appellees, James W. Wilson and Catherine Crumley, sought damages for the destruction of a private crossing from the southern portion of their farm over the appellant's railway to the northern portion of the farm, basing their right to such crossing upon a provision in a deed of conveyance of the railroad's right of way, eighty feet in width, through the lands, to the appellant's grantor, another railroad company; the appellees holding, subject to the right of the railroad company, as tenants in common in equal shares; Catherine, one of the grantors in the deed, having her portion as an heir of her father, and James having his portion under a conveyance from another grantor

in the deed, holding as heir of the same father.    The land in question consisted of 120 acres, over which the railroad ran, dividing the land into portions about equal in size, the buildings being upon the portion south of the railroad, and the equal portion north of the railroad being the most fertile and valuable part of the land.    By the deed, executed in 1883, the grantors therein conveyed and warranted the strip of land eighty feet in width to the Chicago, St. Louis & Pittsburgh Railroad Company, its successors and assigns forever.    It purported to be made in consideration of $1 in hand paid, and it contained the following:  "Said company to make and maintain a good wire or other fence on both sides of the strip of land hereby conveyed; if wire, the same to have six wires with a board at top; and also to make for the grantors one farm crossing, together with all legal and equitable rights, claims and demands therein and thereto."    At the time of the execution of the deed the railroad had been in existence for some years, having been constructed when the land was owned and occupied by the father of the appellees, and there was a good private farm crossing constructed by the railroad company, the railroad being substantially upon a level with the immediately adjacent land, where it inclined downward toward the north.    This crossing was provided with heavy planks between the rails, and adjoining them on the outsides, and with graded and graveled approaches.    It was maintained in this condition by the railroad companies until June, 1901, when the appellant, for the purpose of improving and equalizing the grade of its railroad, raised the surface thereof, making for that purpose an embankment or fill, throughout the course of the railroad across the land of the appellees, thereby destroying the private crossing.    At the place where the crossing had been the embankment was about fourteen or fifteen feet high above the surface of the old crossing.    The height of the embankment varied, but at the lowest point was more than six feet.    The appellant introduced no evidence, but

it appeared in evidence that the appellant had planked a place at some distance eastward from the old crossing, where the embankment was seven or eight feet high above the immediately adjacent ground, but that the sides of the embankment were not graveled nor properly graded, and no suitable approaches were constructed, and that the appellant did not provide a practicable crossing.

It appeared in evidence that the one-half of the farm of the appellees situated on the north side of the railroad, being much lower ground than the portion on the south side where the buildings were situated, was wholly surrounded by the lands of other farmers, and that no highway approached it, and there was no way by which the appellees could reach it with wagons and teams by means of any highways or otherwise, the embankment preventing such passage across the railroad; so that under the conditions created by the appellant the appellees had no opportunity of using the north half of their land for farming purposes in connection with the south portion, whereon they resided. It is well settled that such a covenant in a deed of conveyance of a right of way to a railroad company runs with the land, and is available for the protection of the grantor owning the adjacent land, or his remote grantee, against the railroad company claiming and occupying under such conveyance, whether as the immediate grantee or as remote grantee or successor. See *Toledo, etc., R. Co.* v. *Cosand* (1892), 6 Ind. App. 222; *Lake Erie, etc., R. Co.* v. *Priest* (1891), 131 Ind. 413; *Midland R. Co.* v. *Fisher* (1890), 125 Ind. 19, 8 L. R. A. 604, 21 Am. St. 189; *Lake Erie, etc., R. Co.* v. *Griffin* (1900), 25 Ind. App. 138; 3 Elliott, Railroads, §1149.

3.    There is some dispute as to whether the covenant provided for the maintenance as well as the making of the crossing by the railroad company, and it is contended that the evidence does not sufficiently show the acceptance of the deed of conveyance.    On both these matters it is proper to

take into consideration the nature of the subject-matter, and the construction placed upon the contract by the parties. It appears that the railroad had been constructed and the crossing had been made before the date of the deed. The crossing was maintained in good condition by the companies owning the railroad, up to the time of its destruction by the appellant in 1901. It can not be agreed that the railroad company would have satisfied its obligation under the covenant by making a crossing and then destroying it immediately thereafter, or at any subsequent time while still occupying the right of way, and using it for the purposes for which it was conveyed. The action is not one for the recovery of damages for a mere failure to keep the crossing in proper repair, but is one for the destruction of the crossing, the railroad company being bound by the covenant to supply a crossing and to keep it in repair, which obligation had been recognized by the conduct of the parties for many years. The deed was duly recorded, and the conveyance was beneficial to the appellant. It had not only recognized its obligation to provide the one crossing for many years, but, after it had destroyed it by the elevation of the grade, it still recognized its obligation by pretending to supply a crossing at another point, where it placed planks suitable for a crossing between the rails and at the sides of the track; and, having reference to this place, it notified the appellees that they had their crossing. As before stated, the appellant introduced no evidence. We can not say that there was not any evidence tending to prove the complete execution of the deed of conveyance of the right of way. Nor can we consider the covenant as having been fully complied with by the mere making of a crossing and its maintenance up to the time of the destruction by the appellant, still enjoying its rights under the conveyance.

4. The appellees introduced evidence of the value of the farm with a suitable crossing, and of its value without a crossing, and the jury assessed their damages at $2,850.

We are not prepared to approve the measure of damages by which this result was reached. The change of grade which caused the destruction of the old crossing was a proper improvement of the railway for the better accomplishment of the legitimate purposes for which the strip of land was conveyed. Through such improvement, which the railway company had a right to make, the destruction of the old crossing was inevitable; but the company was bound by contract to make a farm crossing, and, as we think, to maintain one at all times while enjoying the use of the right of way. After the destruction of the old crossing, the company was still bound to provide a crossing for the appellees. The company did not deny this right of the appellees, or repudiate its obligation under the contract, but it prepared what it claimed to be such a crossing as it was bound to provide, but one which the evidence showed to be inadequate and impracticable for the proper and necessary uses of a farm crossing; and the appellees, by reason of the want of such a crossing, had been losing the use and enjoyment of the land north of the railway. The so-called new crossing seems to have been properly constructed upon the top of the railway embankment, but it lacked a suitable approach on each side. Such approaches constitute necessary parts of a crossing. The obligation of the appellant was "to make for the grantors one farm crossing, together with all legal and equitable rights, claims and demands therein and thereto." It was not expressed that the crossing should be made on and within the right of way. Whatever was necessary to constitute a crossing was to be done by the railroad company, and it did not devolve upon the appellees to make or to pay for the approaches; nor were they bound to construct them before resort to their action against the company. It appears from the evidence that, while proper approaches to the new crossing will be somewhat expensive, yet approaches may be made, upon the construction of which the appellees will be supplied with a crossing which

will answer the requirement of the contract, and that all that is necessary to prevent the permanent deterioration of the value of the farm is to make such a crossing as the evidence shows may be constructed. It would seem, then, that the proper measure of damages would be the cost of the completion of the new crossing, together with such amount as will compensate the appellees for the loss of use and enjoyment of their land during the period of such deprivation, down to the time of trial.

The judgment is reversed with leave to the appellees, upon request, to amend their pleadings.