# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**ALBERT C. HARKER**
**MARTIN A. HARKER**
Kiley, Harker, & Certain
Marion, Indiana

ATTORNEY FOR APPELLEE:

**ALFRED H. PLUMMER, III**
Wabash, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| RANDY CORN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  85A02-1405-PL-323 |
| | ) | |
| JUNIOR P. CORN, BONNIE C. CORN | ) | |
| AND BENJAMIN CORN, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Thomas M. Hakes, Special Judge
Cause No. 85C01-1110-PL-812

**January 12, 2015**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Randy Corn ("Randy") appeals, and Junior P. Corn ("Junior"), Bonnie C. Corn, and Benjamin P. Corn ("Benjamin") (collectively, "the Corns") cross-appeal the trial court's order finding Randy and the Corns to be tenants-in-common of a thirty foot-wide lane ("the lane") running through the Corns' property and into Randy's property.

We conclude that the trial court misconstrued the deed provisions relevant to conveyance of the lane, and that fee simple title to the lane rested solely in Randy. But because there is evidence to suggest the existence of a prescriptive easement permitting the Corns to use the lane, and because Randy sought a permanent injunction against such use, we accordingly reverse the trial court's finding that Randy and Junior were tenants in common as to the lane and remand for consideration of each party's claims as to 1) the existence and scope of any prescriptive easement, and 2) a permanent injunction.

## Issues

Randy raises the following issue for our review:

I.    Whether the trial court erred when it found a tenancy in common because title to the lane had never been conveyed to the Corns.

The Corns raise the following issues for our review in the cross-appeal:

II.    Whether the trial court erred in its construction of the various deeds related to the land owned by Randy and the Corns, and therefore erroneously found that Randy held title in the lane;

III.    Whether the trial court erred when it denied the Corns' claim of adverse possession of the lane; and

2

IV.    Whether the trial court erred when it admitted certain testimony into evidence.

**Facts and Procedural History**

Randy and the Corns are successors in interest to parcels of land in Wabash County originally deeded by a United States government land patent.

By 1897, an 80-acre parcel ("the first parcel") of the land originally granted by the patent had been subdivided into a combined 53-acre plot to the north ("the northern parcel"), and two southern plots: an 8-acre plot on the west ("the western parcel") and a 19-acre, "L"-shaped parcel on the east ("the eastern parcel"). The northern reach of the eastern parcel stretched the entire length of the southern boundary of the northern parcel, so that the eastern parcel wrapped around the northeast corner of the western parcel and divided the western parcel from the northern one.

Fee simple title in the western parcel was held by Mary Bailey ("Bailey") subsequent to a conveyance on October 22, 1896. The lane at issue in this case is not mentioned in the 1896 conveyance to Bailey.

The eastern and northern parcels were owned by Priscilla Yeater ("Yeater") and Ludlow Sparling ("Sparling"), a sister and brother who held combined title to the northern and eastern parcels as tenants in common. The lane at issue in this case ran northward toward the northern parcel. One stretch of the lane sat entirely within the northern reach of the eastern parcel as the lane traveled toward the northern parcel. The southernmost portion of the lane lay along a north-south line marking the eastern boundary of the western parcel.

3

On November 29, 1897, three conveyances of property occurred concerning the first parcel. First, breaking up the common tenancy, Sparling conveyed to Yeater ("the Sparling conveyance") title in the eastern parcel. The Sparling conveyance including a provision "[r]eserving [to Sparling] the title in and to a certain lane thirty-feet-wide running parallel with the East-line of said quarter-section." (Joint Ex. 1 at 2.)

Also on November 29, 1897, Yeater conveyed to Sparling ("the Yeater conveyance") the northern plot. The Yeater conveyance reserved for Yeater use of the lane, providing that:

> Granter herein reserving the right-to use a certain lane extending North and South across the said thirteen-acre tract [part of the northern parcel conveyed to Sparling], and being the same lane that is now established and being used by both Grantor and Grantee herein for ingress and egress to and from their respective farms lying in the north half of said South West-quarter of said section

(Joint Ex. 1 at 3.)

In the third conveyance of November 29, 1897, Yeater conveyed to Bailey title in the eastern parcel ("the Yeater-Bailey conveyance"). In the Yeater-Bailey conveyance, Yeater again reserved use of the lane, using the following language: "Excepting and reserving from the above described Real-Estate the title in and to a certain lane and the right of ingress and egress over the same." (Joint Ex. 1 at 5.) The Yeater-Bailey conveyance identifies the lane as running "parallel with the half section line being the East line of [the] eight-acre tract now owned by the Grantee [Bailey], and *extending entirely across the lands hereby conveyed*." (Joint Ex. 1 at 5; emphasis added.)

4

On January 21, 1899, Bailey conveyed to Ovid Conner ("the Bailey conveyance") the western and eastern parcels transferred to Bailey by the Yeater-Bailey conveyance. The Bailey conveyance included a provision purportedly "[r]eserving and excepting from the above described real estate the title in and to a certain lane and the right of ingress and egress, over the same." (Joint Ex. 1 at 8.)

On March 9, 1899, Yeater made another conveyance to Sparling ("the Yeater lane conveyance"). In the Yeater lane conveyance, Yeater quit-claimed her interest in the lane to Sparling. The Yeater lane conveyance specified that both title and right of ingress and egress were conveyed. (Joint Ex. 1 at 10.)

Over the ensuing years, the northern parcel and the combined eastern and western parcels were conveyed to different parties without the estates being reunified under a single title. (Joint Exs. 1 & 2.) In 1977, fee simple title in the northern parcel was conveyed to Randy and his wife, Debra. In 1984, fee simple title in the western and eastern parcels was conveyed to Junior.

Both Randy and Junior used the lane without apparent conflict. Randy used the lane to access his land and home on the northern parcel; Junior used the lane to access farm and pasture land on the western and eastern parcels. By the time Junior acquired title to his parcels, the southern line of the combined eastern and western parcels abutted Speicher Road. The lane intersected Speicher Road, allowing access to the road from Randy's northern parcel and preventing Randy from being landlocked.

5

Junior subsequently conveyed a portion of the western parcel to his daughter, Becky Bowman ("Bowman"). Bowman's portion of the western parcel lay along the southern edge of the parcel, and did not adjoin the lane. Randy and Junior continued their use of the lane running through Junior's two parcels, and Bowman also made use of the lane at times. In 1999, Junior conveyed approximately two acres of land on the southwestern edge of the eastern parcel ("Benjamin's parcel") to his son, Benjamin. Benjamin's parcel adjoined the lane.

Also in 1999, Benjamin commenced construction of a home on his parcel. At that time, Randy approached Junior and a work crew on Benjamin's parcel, claimed that he held title to the lane, and objected to their use of the lane. Benjamin's house nevertheless was constructed with its driveway connected to the lane, rather than to Speicher Road, which lay immediately south of and abutted with Benjamin's parcel.

Thereafter, Randy, Junior, and Bowman continued with their use of the lane, and Benjamin also began use of the lane to access his home. Over the ensuing years, Benjamin, Junior, and Randy would all make improvements to the road. Randy's improvements were performed independently of any work performed by Junior or Benjamin, and consisted of applying fill to holes that emerged in the gravel lane. Junior applied gravel to the lane on several occasions. Benjamin routinely cleared snow on the lane from his home south, and during heavier snowfalls would remove snow farther north on the lane to allow Randy easier access to Speicher Road. Benjamin also used a grater on several occasions to even out the gravel surface.

6

Randy continued to insist that the lane was exclusively his property, and at various points in time placed "No Trespassing" signs on the lane or would ask the Corns whether they were planning to trespass on his land. Nevertheless, all parties continued to make use of the lane, and no evidence was presented that use of the lane was obstructed beyond an occasional partial blockage of the lane because of a parked car.

An attorney for Junior sent a letter to Randy on November 23, 2004. In the letter, Junior claimed title to the lane, and sought to enter into an agreement with Randy concerning joint maintenance of the lane. Randy did not respond to this communication.

In 2006, pursuant to a dissolution of marriage decree, Debra conveyed her interest in the northern parcel to Randy.

In 2010, Junior again communicated with Randy, this time notifying Randy that repairs were needed on a bridge and culvert south of Randy's parcel on the lane, and offering Randy the opportunity to inspect the bridge. Randy disregarded this communication, but after a phone call from Bowman, he inspected the bridge. Randy did not see any need to repair the bridge, but did not convey this to Junior; Junior subsequently paid for repairs to the bridge.

On October 5, 2011, the Corns filed their Complaint to Quiet Title, contending that they held title in fee simple to the lane by virtue of the Bailey conveyance of 1899. The Corns alleged in the alternative that they held fee simple title to the lane as a result of adverse possession. The complaint thus requested that the trial court issue an order quieting Randy's claim in the lane, subject to an easement for ingress and egress to prevent Randy's

7

property in the northern parcel from being landlocked. The Corns also requested that the trial court find that they were entitled to compensation for the expenses for upkeep of the lane and order Randy to pay those expenses.

On April 2, 2012, Randy filed his counterclaim. Randy alleged that he held title to the lane, and sought a permanent injunction against the use of the lane by the Corns. Randy also alleged that the Corns' litigation was frivolous and pursued in bad faith, and sought an order requiring the Corns to pay his attorney's fees.

A bench trial was conducted on November 14, 2013. On January 27, 2014, the trial court entered an order including findings of fact and conclusions thereon. The court concluded that "the Sparling [conveyance] clearly retains the title," that Yeater retained only an easement to the lane, that Yeater "had no reason to retain ownership [of the lane] as she owned no other land that could benefit" and thus "transferred whatever she owned (an easement) to her brother." The court stated that it "put[] great weight into the different language of the Sparling and Yeater [conveyances] and the reference to the right of ingress and egress found in the Yeater [conveyance]," and concluded that Randy and the Corns were tenants in common of the lane. (Appellant's App'x at 146.)

On February 26, 2014, Randy filed a motion to correct error, which was subsequently deemed denied. This appeal ensued.

8

## Discussion and Decision

Standard of Review

Randy appeals the trial court's order denying his motion to correct error. We review such appeals for an abuse of discretion, which occurs when the trial court's decision is clearly against the logic and effect of the facts and inferences supporting the ruling. Hair v. Deutsche Bank Nat. Trust Co., 18 N.E.3d 1019, 1022 (Ind. Ct. App. 2014). Under that standard, we review questions of law de novo. Id.

Underlying the trial court's deemed denial of Randy's motion to correct error is the trial court's findings, conclusions, and order subsequent to the bench trial. Our review of the record uncovered no written request from either party for findings or conclusions. Our standard of review in such cases is well-settled.

> We apply the following two-tier standard of review to sua sponte findings and conclusions: whether the evidence supports the findings, and whether the findings support the judgment. Findings and conclusions will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility.

Trust No. 6011, Lake Cnty. Trust Co. v. Heil's Haven Condominiums Homeowners Ass'n, 967 N.E.2d 6, 14 (Ind. Ct. App. 2012), trans. denied. Though we defer substantially to findings of fact in such situations, we do not defer to conclusions of law, which we review de novo. Id.

9

<u>Title to the Lane</u>

No party in this case disputes Randy's status as fee simple titleholder of the fifty-three acre northern parcel by virtue of his position as successor in interest to the land whose title was transferred from Yeater to Sparling in the Yeater conveyance. Nor does any party dispute the Corns' ownership of title to the twenty-seven acres straddling the lane. The sole dispute is as to title over the lane itself.

Thus, we turn to the question of whether Randy, the Corns, or both held title to the lane. The trial court concluded Randy and the Corns held title to the lane as tenants in common; each party contends that it alone holds fee simple title, and asserts its claim based upon deed provisions. Thus, we are faced solely with a legal question concerning the construction of those deed provisions.

> There are several rules of construction to be used when construing the meaning of a particular deed. The object of deed construction is to ascertain the intent of the parties. <u>Hemenway Memorial Presbyterian Church v. Aigner</u> (1982), Ind.App., 443 N.E.2d 93, 94. In so doing, a deed is to be regarded in its entirety and the parts are to be construed together so that no part is rejected. <u>Id.</u> Where there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone. <u>Enderle v. Sharman</u> (1981), Ind.App., 422 N.E.2d 686, 692; <u>Long v. Horton</u> (1956), 126 Ind.App. 651, 133 N.E.2d 568.

<u>Brown v. Penn Cent. Corp.</u>, 510 N.E.2d 641, 643 (Ind. 1987). The construction of the terms of a written instrument such as a deed is a pure question of law, the review of which we conduct <u>de novo</u> on appeal. <u>Keene v. Elkhart Cnty. Park & Recreation Bd.</u>, 740 N.E.2d 893, 896 (Ind. Ct. App. 2000).

10

The Sparling conveyance transferred to Yeater title in the eastern parcel, but reserved for Sparling title in the lane itself with a provision, "[r]eserving [in Sparling] the title in and to a certain lane thirty-feet-wide running parallel with the East-line of said quarter-section." (Joint Ex. 1 at 2.) The Yeater conveyance, which transferred title in the northern parcel to Sparling, included the following provision:

> Granter herein reserving the right-to use a certain lane extending North and South across the said thirteen-acre tract [part of the northern parcel conveyed to Sparling], and being the same lane that is now established and being used by both Grantor and Grantee herein for ingress and egress to and from their respective farms lying in the north half of said South West-quarter of said section…

(Joint Ex. 1 at 3.)

Thus, Sparling, who assumed sole title over the northern parcel, reserved his title interest in the lane running through the eastern parcel. Yeater reserved the right of use "for ingress and egress" of the lane.

Yeater subsequently conveyed her interest in the eastern plot to Bailey, who already owned the western plot. Yeater's conveyance to Bailey expressly reserved "title in and to a certain lane and the right to ingress and egress over the same…*the West-line of which lane running North and South parallel with the half-section line being the East-line of said eight-acre tract now owned by the Grantee* [Bailey]." (Joint Ex. 1 at 5; emphasis added.)

Taken together, the plain language of these three conveyances indicates that Sparling and Yeater, who previously owned as tenants in common the eastern and northern parcels under a single title, agreed to subdivide the two parcels. Sparling took sole fee

11

simple title to the northern parcel. The Yeater-Bailey conveyance makes it clear that the lane ran "parallel with" the eastern boundary line of the western parcel—but that the lane was not part of Bailey's western parcel, because the lane's western edge formed the eastern boundary of the western parcel. Thus, Bailey did not hold title to the lane prior to the Yeater-Bailey conveyance. Further, the Yeater-Bailey conveyance reserves to Yeater "title in and to" the lane "and the right of ingress and egress over the same." (Joint Ex. 1 at 5.)

Two additional conveyances, both in 1899, further clarify title over the lane. On January 21, 1899, Bailey and her husband, Frances, conveyed their combined title over the western and eastern parcels to Ovid Conner. That deed expressly excepted from the conveyance "title in and to a certain lane"—the lane at issue in this case. (Joint Ex. 1 at 8.) Moreover, on March 9, 1899, Yeater subsequently conveyed both the title and right of ingress and egress to Sparling in March 1899. (Joint Ex. 1 at 10.)

In summary, then, all documents in the chain of title pertaining to the earliest transfers in which the lane is mentioned make it clear that 1) the lane was part of the eastern parcel; 2) Sparling retained title in the lane; 3) Yeater's conveyance of the eastern parcel to Bailey did not include within its four corners title to the lane; and 4) Bailey did not consider the lane part of the combined eastern and western parcels, and did not purport to convey title in the lane to Conner in 1899. The Corns are successors in interest to the estate conveyed to Bailey, Conner, and subsequent titleholders, and this line of conveyances excludes ownership of the lane from that chain of title.

12

The Corns' brief on appeal contends that even if this is the case, nevertheless the reservation of title and right of use in the Yeater-Bailey-Lessing chain of title documents contradict one another, and this works to grant Randy only an easement to use the lane. They characterize these provisions in the Yeater-Bailey-Lessing chain of title as a *habendum* clause, that is, a clause in the granting portion of the deed that "defines the extent of the ownership in the thing granted," the function of which clause "is properly to determine what estate or interest is granted by the deed" and which "may lessen, enlarge, explain, or qualify, but not totally contradict or be repugnant to, [the] estate granted in the premises." Tazian v. Cline, 686 N.E.2d 95, 100 n.9 (Ind. 1997) (quoting Blacks' Law Dictionary 710 (6th ed. 1990)).

The Corns' argument in this regard misses the mark. First, it ignores the unconflicting, unambiguous reservation by Sparling of "title" in the lane in the Sparling conveyance to Yeater. The least interest Randy could have, as successor in interest to the Sparling conveyance, is that of a tenant in common of a fee simple interest in the lane; this defeats the Corns' contention that the trial court erred when it concluded that Randy held some form of fee simple title in the lane, rather than merely an easement.

Second, as we have observed above, when Yeater conveyed to Bailey the eastern parcel that contained the lane, Yeater reserved both "title in and to" the lane, as well as "the right of ingress and egress over the lane." (Joint Ex. 1 at 5.) Yeater subsequently conveyed these rights to Sparling by means of a quitclaim deed, and Bailey's conveyance to Conner also expressly reserved from the grant both "title in and to" and "the right of

13

ingress and egress over the lane." (Joint Ex. 1 at 8.) The Corns contend this to be the type of *habendum* that "totally contradicts[s] or [is] repugnant to" the estate granted by Yeater to Bailey. Tazian, 686 N.E.2d at 100 n. 9.

We disagree. The *habendum* providing "right of ingress and egress" does not "contradict or defeat" Yeater's reservation of title in the conveyance to Bailey. Id. And though "surplusage" may "convict[] the parties of using unnecessary and redundant language," it may "acquit[] them of the charge of inconsistency and of making a void instrument." Davenport v. Gwilliams, 133 Ind. 142, 31 N.E. 790, 791 (1892). The reservation of fee simple title in that conveyance is clear; accordingly, as a result of the reservation in the Sparling conveyance, and the 1899 quitclaim deed conveying Yeater's title interest in the lane to Sparling, fee simple title in the lane rested solely in Sparling. Subsequent transfers from Sparling all include in their terms both title in and right to use of the lane; that chain of title ends with Randy. Accordingly, under the terms of the deeds associated with conveyance of the various parts of the original parcel, sole fee simple ownership of the lane rests with Randy.

We accordingly agree with both parties that the trial court erred when it found that Junior and Randy shared title in the lane as tenants in common, and hold that as a matter of law, Randy held fee simple title in the lane.

## Adverse Possession

Our holding that fee simple title to the lane rests solely with Randy does not resolve the appeal in its entirety. The Corns contend that, if Randy holds fee simple title to the

14

lane by virtue of the deed provisions, the trial court erred when it did not find that the Corns took fee simple title of the lane from Randy by means of adverse possession.

To establish adverse possession of the lane, the Corns were required to establish by clear and convincing evidence the elements of "(1) control, (2) intent, (3) notice, and (4) duration." Wilfong v. Cessna Corp., 838 N.E.2d 403, 406 (Ind. 2005). The Indiana Supreme Court has reformulated the common-law elements upon review of established case law, and explained these elements as follows:

> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
>
> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");
>
> (3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,
>
> (4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

Fraley v. Minger, 829 N.E.2d 476, 486 (Ind. 2005).

In their cross-appeal, the Corns contend that the trial court erred when it found that they had not obtained fee simple title over the lane through adverse possession. Specifically, Junior contends that the trial court incorrectly found that the Corns had not established the element of control by clear and convincing evidence, and argues that the

15

characteristics of the lane, the nature of the use of the lane by the Corns and Randy, and the payment of taxes on the land by Junior weighed properly in Junior's favor.

The trial court found that Junior did not exercise control because he did not possess the lane exclusively, that all parties used the lane daily, and that Randy had done so since 1977—seven years before Junior acquired title to the western and eastern parcels. While Junior's use of the lane may comport with that of an owner's use and Randy's use may resemble that of one making use of an easement, neither of these characterizations of use compel an outcome different from that arrived at by the trial court as to Junior's adverse possession claim. Junior's contentions to the contrary amount to requests that we reweigh evidence. We cannot do this, and we accordingly find no error in the trial court's denial of Junior's claim of adverse possession.

That does not end our consideration of the case, however. As our supreme court observed in Wilfong, the four reformulated elements of adverse possession "appl[y] as well for establishing prescriptive easements, save for those differences required by the differences between fee interests and easements." 838 N.E.2d at 406. And while we find no error in the trial court's ultimate determination that Junior did not establish by clear and convincing evidence his entitlement to title over the lane under a theory of adverse possession, we observe that he presented evidence relevant to a claim for a prescriptive easement over some portion of the lane. Further, in pleading the elements of adverse possession, Junior also pled the elements for a prescriptive easement under the Indiana Supreme Court's formulation of that doctrine in Fraley and Wilfong. But because the trial

16

court found that Randy and Junior were tenants in common, it would not have addressed the question of a prescriptive easement.

Further, we note that Randy's prayer for relief included a request for entry of a permanent injunction against the Corns' use of the lane. Because the trial court found that Randy and Junior were tenants in common, it did not address Randy's request for permanent injunctive relief.

Thus, outstanding questions remain concerning the existence, nature, and scope of a prescriptive easement, on the one hand, and Randy's sought-after permanent injunction, on the other. Our reversal of the trial court's ruling on the question of title over the lane does not resolve those matters, and we therefore remand this case for further proceedings.

Admissibility of Evidence

We turn, finally, to the Corns' final contention in their cross-appeal, namely, that the trial court abused its discretion in admitting certain testimony during the bench trial. We review a trial court's decision on evidentiary matters for an abuse of discretion. Reed v. Bethel, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014).

Here, the Corns direct our attention to testimony offered by Greg Metz ("Metz") and John Stevens ("Stevens"), whom Randy called as witnesses to testify concerning their work compiling an abstract of title and surveying the parcels. At trial, the Corns timely objected to statements that they contend are opinions drawing legal conclusions as to the proper construction and effect of the deeds. But we review the construction of deeds and other conveyances of real property de novo as solely legal matters. Keene, 740 N.E.2d at

17

896.  Having reviewed the deeds <u>de novo</u>, we reached a construction of the 1897 and 1899 conveyances that differs from that of the trial court.  We accordingly do not reach the issue of the admissibility of the testimony of Metz and Stevens.

**Conclusion**

The trial court erred as a matter of law when it construed the conveyances to provide a tenancy in common as to Randy and Junior; rather, Randy holds sole title to the lane. The trial court did not err when it declined to find that Junior had taken title of the lane through adverse possession.  However, the Corns' complaint alleged a claim for relief under a theory of prescriptive easement, and Randy sought a permanent injunction; because of the trial court's findings in the case, neither of these were addressed at the trial court level, and we accordingly remand this matter to the trial court for further proceedings consistent with our opinion today.  Finally, because of our disposition of the case, we do not reach the Corns' contentions concerning erroneous admission of opinion testimony.

Reversed and remanded.

ROBB, J., and BROWN, J., concur.

18